MCDERMOTT WILL & EMERY LLP
JASON D. STRABO (SBN 246426)
jstrabo@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, California  90067
(310) 277-4110

MICHAEL S. NADEL (*pro hac vice* pending)
mnadel@mwe.com
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

*Attorneys for Defendants and Counterclaim-Plaintiffs*
*Elevated Ag, LLC and Maricopa Orchards, LLC*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ASSEMI,<br><br>    Plaintiff,<br><br>    v.<br><br>FARID ASSEMI, et al.,<br><br>    Defendants.<br><br>ELEVATED AG, LLC, and<br>MARICOPA ORCHARDS, LLC,<br><br>    Counterclaim Plaintiffs,<br><br>    v.<br><br>KEVIN ASSEMI,<br><br>    Counterclaim Defendant. | No. 1:23-CV-01741-EPG<br><br>JURY TRIAL DEMANDED<br><br>**COUNTERCLAIMS AGAINST KEVIN ASSEMI** |

Pursuant to Federal Rule of Civil Procedure 13, Counterclaim Plaintiffs Elevated Ag, LLC, and Maricopa Orchards, LLC, respectfully bring counterclaims against Counterclaim Defendant Kevin Assemi. Counterclaim Plaintiffs state as follows.

## NATURE OF THE COUNTERCLAIMS

1. Kevin Assemi is a common thief. He stole $360,691 from Elevated Ag, LLC ("Elevated") by directing a business partner to pay Elevated's invoices by wire to bank accounts controlled by Kevin Assemi rather than to Elevated's bank account. Elevated seeks recovery of its funds and a judgment holding Kevin Assemi accountable for his theft.

2. Kevin Assemi is also a forger. In February 2022, Kevin Assemi and his business partners (including his family) signed an LLC operating agreement establishing that Kevin Assemi holds a "45 percent" interest in Elevated. In 2023, the Assemi family's business, Maricopa Orchards, LLC ("Maricopa"), was on the verge of closing a significant financing for Elevated with the bank "AgWest," formerly known as Farm Credit West. Kevin Assemi torpedoed the financing by sending AgWest a version of the Elevated's operating agreement that Kevin Assemi electronically altered, making it show, falsely, that Kevin Assemi holds a majority interest in Elevated. To be clear, this is not a matter of legal interpretation or a dispute about who actually owns what percentage of Elevated. Rather, Kevin Assemi used electronic tools to *replace* the ownership table in the operating agreement's electronic file with a different, *fake* ownership table. Then Kevin Assemi sent the fake version of the operating agreement to the bank, along with a litany of false statements regarding Maricopa and its executives. Kevin's forgery killed the loan, to Maricopa's and Elevated's great detriment, and damaged Maricopa's long-term financing relationship with AgWest.

3. Kevin Assemi's theft and forgery represent crimes. But they are also intentional torts that carry compensatory and punitive damages. Elevated and

Maricopa bring these counterclaims to hold Kevin Assemi accountable for his bad acts and recover every available remedy. Kevin Assemi's time is up.

## COUNTERCLAIM PARTIES

4. Counterclaim Plaintiff Elevated Ag, LLC is a California limited liability company with its principal place of business at 5260 N. Palm Avenue, Suite 421, Fresno, California 93704.

5. Counterclaim Plaintiff Maricopa Orchards, LLC is a California limited liability company with its principal place of business at 5260 N. Palm Avenue, Suite 421, Fresno, California 93704.

6. Upon information and belief, Counterclaim Defendant Kevin Assemi is a citizen of California currently residing 7561 N. Cheryl Avenue, Fresno, California 93711.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under to 28 U.S.C. § 1331 because Counts 8, 9, and 10, and 11 of the original Complaint in this matter are brought as civil RICO claims, purportedly under to 18 U.S.C. §§ 1961 and 1962. This Court has subject matter jurisdiction over these counterclaims pursuant to 18 U.S.C. § 1367(a).

8. Kevin Assemi is subject to personal jurisdiction in California because he resides in California, has committed the tortious conduct alleged herein exclusively in California, and filed this action in California.

9. Venue is proper in the Eastern District of California under to 28 U.S.C. § 1391(b) because all the parties reside in this District and because a substantial part of the acts and omissions giving rise to the counterclaims occurred in this District.

## FACTS

10. Elevated is an agricultural enterprise that was created by the filing of Articles of Organization filed with the Secretary of State of California on September 15, 2020.

11. Elevated is governed by an Operating Agreement made effective September 16, 2020. Kevin Assemi attached the Operating Agreement to his Complaint, and it has been filed on the docket as ECF Doc. 1-1 Exhibit A.

12. The Operating Agreement is executed by the original members of Elevated Ag—Kevin Assemi and the various parties he has sued in this case: Maricopa; Jeremy A. Yurosek, trustee of the Jeremy J. Yurosek Trust; Devon Yurosek and Jeffrey Yurosek, trustees of the Devon J. Yurosek Trust; and Malakan Investments, LLC.

13. Each member signed the Operating Agreement using Docusign software, which assigned the finally executed version to following identification number:

> DocuSign Envelope ID: 5F6C9C5A-1AD5-46B6-846E-98BD9683F19C

14. Pursuant to Section 4.1 of the Operating Agreement, Elevated's original managers were Kevin Assemi, Devon Yurosek, and Jeremy Yurosek. Kevin Assemi ran Elevated's day-to-day business.

15. Elevated was a party to a series of packing and marketing agreements with Trinity Fruit Company, Inc. ("Trinity"). Under those agreements, Trinity would purchase certain crops from Elevated to pack and market. Elevated would invoice Trinity for the purchases. As the primary manager of Elevated, Kevin Assemi regularly coordinated with Trinity to handle payments of invoices.

16. During the course of 2021 and 2022, Kevin Assemi's behavior became increasingly erratic, and he became estranged from his family.

17. On December 28, 2022, the other members of Elevated removed Kevin Assemi as a manager of Elevated. *See* ECF Doc. 1-1 Exhibit B.

18. To protect Elevated from Kevin Assemi's bizarre conduct, the new managers of Elevated severed ties between Elevated and Kevin Assemi, except for those required by the Operating Agreement and Kevin Assemi's continuing 45 percent interest in Elevated.

/ / /

**Kevin Assemi's Theft of $360,691 from Elevated**

19.     On March 9, 2023, unaware that Kevin Assemi had been removed from a management role at Elevated, Trinity sent an email to Kevin Assemi requesting wire instructions to make payments on outstanding invoices.

20.     Kevin Assemi responded that Trinity should send a wire of funds to what he claimed was Elevated's bank account at Bank of America:



21.     This is the problem: <u>Elevated has never maintained an account with Bank of America.</u>  Kevin Assemi controlled the Bank of America account to which he fraudulently directed Trinity to send payment for Elevated's invoices.  Since its

founding, Elevated has maintained only one bank account, with Citizens Business Bank, ending in -1020. Kevin Assemi instructed Trinity to transfer money belonging to Elevated and intended for Elevated <u>to Kevin Assemi personally</u>.

22. Everything in Kevin Assemi's email to Trinity was false. By March 2023, Kevin Assemi had no role with Elevated, except as a recalcitrant minority owner. And Elevated was not operating from 7561 N. Cheryl Avenue in Fresno. That is the address of Kevin Assemi's mother's house, where Kevin Assemi was staying.

23. Kevin Assemi was attempting common theft—and it worked. On March 13, 2023, Trinity, believing it was paying Elevated, unknowingly paid $78,200.00 to Kevin Assemi himself.

24. Kevin Assemi did not alert Elevated to Trinity's payment. Kevin Assemi did not pass the funds on to Elevated. Instead, Kevin Assemi kept the $78,200.00 for himself.

25. By June 2023, Kevin Assemi's desperation was growing. He had gotten himself pushed out of the company he was obsessed with. His family, which had tolerated his antics for years, had exhausted its patience with him. He had no job, no income, and no home of his own. Each of the three law firms he had engaged to fight against his family had disengaged, and he had no means to pay his accumulated legal fees.

26. But Kevin Assemi knew of one source of substantial funds: Trinity.

27. On June 23, 2023, Trinity attempted to wire "Elevated Ag c/o Kevin Assemi" a payment of $282,491.63. The wire was unsuccessful, however, so an accountant at Trinity reached out to Kevin Assemi, still unaware of his separation from and battle with Elevated.

28. On June 26, 2023, six months after being removed as a manager of Elevated, Kevin Assemi responded to the Trinity accountant by email. The email shocks the conscience, so it is reprinted in full:

/ / /

> Hello Gail,
>
> I apologize, for the issue. Bank of America wanted us to consolidate our business accounts for Elevated Ag with our DBA Farmwerx, LLC. Here is our updated wire instructions, you can make the check out tour DBA Farmwerx, LLC.
>
> **Bank of America Wire-**
> - Farmwerx, LLC
> - Account number:
> - ☒☒☒☒711
> - Routing number:
> - 026009593 (wires)
>
> If need be this is still the same, with Farmwerx, LLC DBA for the check again.. But the wire is preferred.
> For purposes of mail or checks address is
>
> Check Payable to Farmwerx, LLC
>
> Elevated Ag C/ O Kevin Assemi
> 7561 N. Cheryl Ave,
> Fresno CA, 93711
>
> I apologize for some of the administrative issues, our family and their business is going through some issues which I have tried to help them address and it has some spill over. I am working to wrap up things. I appreciate you understanding. Thank you.
>
> Also, what is your timing for completing the distributions and the estimated distribution amount? Thank you.
>
> Feel free to call me on my cell 310-383-9205.
>
> I have also copied my assistant Jenifer to help make sure questions and concerns are addressed and that anything of urgency get through to me quickly. Here cell is 559-770-7029 .
>
> Warmest Regards,
> Kevin Assemi
>
> Elevated AG

29. Just about everything in Kevin Assemi's email is fraudulent.

30. Farmwerx is a limited liability company created by Kevin Assemi with its principal office at his mother's house. Farmwerx had no relationship with Elevated in June 2023.

31. Bank of America did not want Elevated to "consolidate" Elevated's accounts with Farmwerx, because Bank of America is not and never has been Elevated's banker.

32. No one from Bank of America could have indicated to Kevin Assemi that Elevated accounts should be consolidated with Farmwerx accounts; there were no Elevated accounts with Bank of America.

33. The Farmwerx account numbers that Kevin Assemi provided to Trinity were for accounts controlled by Kevin Assemi and not affiliated with Elevated, and the account number was dissimilar from Elevated's account number at Citizens Bank.

34. A "Check Payable to Farmwerx, LLC" would not have been a payment to Elevated, and was not intended by Kevin Assemi to be a payment to Elevated.

35. There were no "administrative issues"—except that Trinity had been unable to complete a wire transfer using the fraudulent information that Kevin Assemi had provided in March 2023.

36. Kevin Assemi was not trying "to help" his family and their business "address" issues. Nor was Kevin Assemi "working" to "wrap" such issues up. He was trying to steal from them. And he did so.

37. Trinity followed Kevin Assemi's instructions and wired the $282,491.63 to Kevin Assemi's account, rather than to Elevated.

38. Kevin Assemi did not alert Elevated to Trinity's payment. Kevin Assemi did not pass the funds on to Elevated. Instead, Kevin Assemi kept the $282,491.63 for himself.

39. In total, Kevin Assemi stole from Elevated at least $360,691.63 in payments from Trinity.

40. That was far from the end of Kevin Assemi's dishonesty, however.

**Kevin Assemi's Forgery and False Statements to AgWest**

41. During the same June time period that Kevin Assemi was stealing the second round of payments from Trinity, his family's business, Maricopa, was on the verge of closing a major round of financing for Elevated with AgWest. AgWest had a long-standing business relationship with Maricopa and the Assemi family. AgWest had previously provided loans to Maricopa and was likely to continue doing so in the future, as demonstrated by its intention to loan money to Elevated, of which Maricopa was the 50 percent plurality owner.

///

42. Kevin Assemi, who is a former executive with Maricopa, knew of the business relationship between Maricopa and AgWest. Somehow, Kevin Assemi got wind of the AgWest transaction involving Elevated.

43. Kevin Assemi became determined to stop the transaction as a means of creating leverage to force his family to give him money that he desperately needed and believed himself entitled to.

44. On June 29, 2023, Kevin Assemi emailed Kevin Layne, an AgWest vice president. Kevin Assemi wrote to Kevin Layne, in part: "I am the sole manager [of Elevated], see page 8 section [4.1], having sole authority to choose manager as majority owner based on our initial contributions-which you will find on page 2, section 2.1, including Maricopa['s] contributions in kind."

45. All of this was false and fraudulent. Kevin Assemi was not the "sole manager" of Elevated, nor a manager at all, having been removed by the other members six months earlier. Nor was Kevin Assemi the majority owner of Elevated. At no point did Kevin Assemi hold more than 45 percent ownership of Elevated. And in June 2023, Kevin Assemi had no authority whatsoever with respect to Elevated.

46. But Kevin Assemi's statements to Kevin Layne were not mere unsupported assertions. <u>Kevin Assemi supported them with a forged version of the Operating Agreement</u>, which Kevin Assemi used computer software to create. Kevin Assemi transmitted the forged version to Kevin Layne by email.

47. The forged document that Kevin Assemi sent to Kevin Layne bears the same Docusign ID as the real Operating Agreement:

> DocuSign Envelope ID: 5F6C9C5A-1AD5-46B6-846E-98BD9683F19C

But it is not the same document. It is a fake.

48. Section 2.1 of the Operating Agreement sets forth the members' percentage interests in Elevated:

| Member | Percentage Interest |
|---|---|
| Kevin | 45 percent |
| Jeremy | 5 percent |
| Devon | 5 percent |
| Malakan | 5 percent |
| Maricopa | 40 percent |

2.1 Percentage Interests in Company. In exchange for their initial capital contributions made by each Member as shown on the books and records of the Company, the Percentage Interests of the Company are held as follows:

49. In the forged version that Kevin Assemi sent to Kevin Layne, he replaced Section 2.1:

2.1 Percentage Interests in Company. In exchange for their initial capital contributions made by each Member as shown on the books and records of the Company, the Percentage Interests of the Company are held as follows:

| Member | Initial Capital Contribution* | Percentage Interest | |
|---|---|---|---|
| 3020 · Maricopa Equity (in Kind see Schedule) | $ 5,740,560 | 40% | |
| 3040 · Kevin Assemi Equity | $ 8,266,363 | 57% | |
| 3060 · Nader Malakan Equity | $ 420,000 | 3% | |
| 3080 · Jeremy Yurosek Equity | $ - | 0% | Resigned |
| 3090 · Devon Yurosek Equity | $ - | 0% | Resigned |
| | 14,426,923 | 100% | |

(a) Maricopa Contribution in Kind:

| Contributions | APNS | Water Rights (CAW) | AF/Acre | Acres | Maricopa Valuation On Contribution | Total |
|---|---|---|---|---|---|---|
| Basic School Farm Land Only | 220-211-24 | 547.8 | 2.79 | 196.4 | $14,000 | $2,749,320 |
| | | None | | 309.6 | $ 2,000 | $ 619,240 |
| Gardner Field Farm (Land Only) | 220-050-71 | | | 186 | $ 2,000 | $ 372,000 |
| Yurosek Ownership Purchase | | | | | | $2,000,000 |
| Maricopa Contributions | | | | | | $5,740,560 |

*Valuation of interest by Maricopa has not been reduced for options rights by other partners or true up on initial valuation in kind.

Sitting at a keyboard, Kevin Assemi purportedly transformed himself into the 57 percent majority owner of Elevated.

50. Kevin Assemi also altered Section 4.1 of the Operated Agreement, making it appear to provide: "The Members agree Kevin Assemi, shall manage and control the Company's business and affairs, for the benefit of all Members, as the 'Managers' of the Company and each a 'Manager.' Jeremy Yurosek and Devon

- 10 -   COUNTERCLAIMS AGAINST KEVIN ASSEMI

Yurosek have resigned on or before December 27, 2022 as Managers leaving Kevin Assemi as sole manager."

51. Kevin Assemi did *not* provide to Kevin Layne the Action by Written Consent that the Managers adopted on December 28, 2022:

> In accordance with Section 17704.07 of the California Revised Uniform Limited Liability Company Act and Section 2.8 of the Operating Agreement (the "Operating Agreement") of Elevated Ag, LLC, a California limited liability company (the "Company") dated effective as of September 16, 2020, the undersigned constituting Members holding a majority of the outstanding Percentage Interests of the Company take the following actions without a meeting:
>
> **REMOVAL OF MANAGER**
>
> 1. Kevin Assemi is removed as a Manager of the Company as of the Effective Date of this Action.
>
> **APPOINTMENT OF ADDITIONAL MANAGERS**
>
> 1. Nader Malakan and Farshid Assemi are hereby appointed to be Managers of the Company as of the Effective Date of this Action.

52. Kevin Assemi implored Kevin Layne: "Please do not close the loan and let's discuss."

53. It took only 28 minutes for Kevin Assemi's attempted sabotage of the loan and Maricopa's relationship with AgWest to succeed. Kevin Layne wrote to the Assemi Group: "I just received the email below with an attachment also attached to this email. The attachment shows many contradictions in ownership, management, and signatory powers for Elevated Ag. Both documents appear to be legitimate and I'm unable to determine which one is accurate. Unfortunately, I'm going to have to put this loan on hold until all owners can come to an agreement and provide me with documentation to that effect."

54. Later in the day, Kevin Assemi sent another email to a group of recipients including Kevin Layne at AgWest. Kevin Assemi wrote, in part: "I have now contacted the Farm Credit Administration directly through their Criminal Referral program to report the attempted fraudulently recording (sic) a loan on Elevated Ag's property without authority to do so and appropriate the money for non-Elevated Ag own use (sic) and all without even informing me."

55. Kevin Assemi further stated: "I have already reached out to the enforcement branch of California's lending agency DFPI and will be advancing my reporting of your misconduct regarding the Yurosek loan and SME Partners and retaliatory action. This includes all correspondence from the Yuroseks, John [Bezmalinovic], [Jason Hollrah], and others making it very clear your misconduct (sic)."

56. Kevin Assemi further stated: "Lastly, early on reached out to higher up enforcement agencies regarding this misconduct and other significant misconduct which there have been recent newspaper articles published (sic.). I have fully documented this now and I will be circling back to report to this all to this agency as well."

57. John Bezmalinovic, the Assemi Group's general counsel, did not engage in any misconduct. Nor did Jason Hollrah, the Assemi Group's chief financial officer. Nor did Devon Yurosek. Nor did Jeremy Yurosek. Kevin Assemi's statements to AgWest to the contrary were false. No one attempted fraudulent recording of a loan. The only fraud was by Kevin Assemi.

58. As Kevin Assemi intended, as a result of the false information provided by Kevin Assemi, AgWest backed out of the financing that it been prepared to provide. The loss of that financing significantly harmed Elevated's enterprise.

59. The loss of the financing also harmed Maricopa, because a portion of the loan would have been used to pay off debt that Elevated owned to Maricopa.

60. The false information by Kevin Assemi also harmed and disrupted Maricopa's relationship with AgWest. Since Kevin Assemi's misconduct, Maricopa has been unable to obtain financing from AgWest, which has significantly harmed Maricopa's enterprise. Several loans from AgWest to Maricopa that were under review did not go forward as a result of Kevin Assemi's misconduct.

/ / /

/ / /

## COUNTERCLAIM I
## CIVIL THEFT – CALIFORNIA PENAL CODE § 496(c)
### (Brought by Elevated)

61. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

62. Kevin Assemi committed theft.

63. Kevin Assemi intended to, and did, permanently deprive Elevated of the the $360,691.63 that Trinity intended to transfer by wire to Elevated in payment of Elevated's invoices.

64. Kevin Assemi directed Trinity to make payment to Elevated "care of Kevin Assemi," knowing he was not a manager of Elevated nor authorized to receive payments for Elevated.

65. Kevin Assemi directed Trinity to wire money to accounts he controlled at Bank of America, knowing they were accounts controlled by him, not Elevated, and further knowing that Elevated did not have and had never had accounts at Bank of America.

66. In addition to supplying false account information to Trinity to steal Elevated's money, Kevin Assemi made numerous false representations to Trinity intended to deceive Trinity and facilitate his theft.

67. Kevin Assemi received property—the $360,691.63 from Trinity, that was stolen and obtained by him in a manner constituting theft, known the property was stolen by him, and was then withheld it from Elevated, knowing it belonged to Elevated.

68. Kevin Assemi's actions were willful and malicious.

69. Kevin Assemi's conduct has injured Elevated in violation of California Penal Code § 496(a).  Pursuant to California Penal Code § 496(c), Maricopa is entitled to $1,082,074.89—"three times the amount of actual damages"—and reasonable attorney's fees.

## COUNTCLAIM II
## CONVERSION
### (Brought by Elevated)

70. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

71. Elevated was entitled to the $360,691.63 that Trinity intended to transfer by wire to Elevated in payment of Elevated's invoices.

72. Kevin Assemi wrongfully and intentionally directed Trinity's payments away from Elevated and to accounts controlled by Kevin Assemi. In so doing, Kevin Assemi wrongfully dispossessed Elevated of its property rights.

73. Elevated was damaged by the loss of the $360,691.63 that Kevin Assemi stole.

74. Kevin Assemi's actions are egregious and reprehensible. Kevin Assemi was stealing from his business partners and, effectively, his family—people who trusted him, at least when they went into business with him.

75. Maricopa is entitled to $360,691.63 in compensatory damages and punitive damages in an amount to be determined at trial.

## COUNTERCLAIM III
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
### (Brought by Maricopa and Elevated)

76. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

77. Kevin Assemi knowingly interfered with Maricopa's economic relationship with AgWest.

78. Kevin Assemi knowingly interfered with Elevated's economic relationship with AgWest.

79. Specifically, Kevin Assemi altered the operating agreement and used the forged, fake version to dissuade AgWest from closing the financing for Elevated that was on the verge of closing, including by falsely representing that Kevin Assemi was the majority owner of Elevated.

80. Kevin Assemi made false statements to AgWest suggesting that Maricopa and Maricopa officials had engaged in criminal activity, fraud, and other misconduct.

81. Kevin Assemi intended his false statements and the forged version of the Operating Agreement to prevent AgWest from closing its loan to Elevated and to disrupt the long term financing relationship between AgWest and Maricopa.

82. Kevin Assemi's misconduct was independently wrongful as a violation of California common law.

83. Kevin Assemi knew that his misconduct would result in the disruption of the prospective economic relationship between AgWest and Maricopa, and that was his intent.

84. Kevin Assemi's intentional misconduct disrupted the perspective economic relationship between AgWest and Maricopa.

85. As a direct and proximate result of Kevin Assemi's conduct, Maricopa and Elevated have each sustained significant harm and damages in any amount to be proven at trial.

86. Kevin Assemi's conduct was egregious, wanton, willful and malicious, warranting punitive damages.

## COUNTERCLAIM IV
## BREACHES OF FIDUCIARY DUTIES
### (Brought by Elevated)

87. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

88. Kevin Assemi contends that he is the manager of Elevated, and that his removal from that position is invalid.

89. Kevin Assemi is incorrect. But if Kevin Assemi were correct, then as manager of Elevated he would owe to Elevated fiduciary duties of loyalty and care pursuant to California Corporate Code § 17704.09.

90. If Kevin Assemi owed Elevated a duty of loyalty, he breached that duty of loyalty by stealing from Elevated the $360,691.63 that Trinity attempted to pay to Elevated.

91. If Kevin Assemi owed Elevated a duty of care, he breached that duty of care by engaging if intentional misconduct and knowingly violating the law by stealing from Elevated the $360,691.63 that Trinity attempted to pay to Elevated and by transmitting to AgWest, over the wires, the forged version of the Operating Agreement and related false statements, thereby sabotaging AgWest's financing of Elevated.

92. Elevated was each injured by Kevin Assemi's egregious and malicious misconduct.

**JURY DEMAND**

93. Maricopa and Elevated demand a trial by jury on all claims so triable.

**REQUESTED RELIEF**

Counterclaim Plaintiffs respectfully request the following relief:

a. Judgment on each counterclaim in Counterclaim Plaintiffs' favor and against Kevin Assemi;

b. As to Counterclaim I for civil theft, an award for Elevated in the amount of $1,082,074.89, and attorney's fees as provided by California Penal Code § 496(c);

c. As to Counterclaim II for conversion, an award for Elevated in the amount of $360,691.63 in compensatory damages and punitive damages in an amount to be determined at trial;

d. As to Counterclaim III for intentional inference with prospective economic relations, an award for Maricopa and Elevated of compensatory and punitive damages in an amount to be determined at trial;

e. As to Counterclaim IV for breach of fiduciary duties, an award for Elevated of compensatory and punitive damages in an amount to be determined at trial;

f. Equitable relief preventing Kevin Assemi from being unjustly enriched or otherwise benefitting from his wrongdoing, including barring Kevin Assemi from recovering any share of money awarded to Elevated;

g. Attorney's fees and costs, including pursuant to 28 U.S.C. § 1920;

h. Pre-judgment interest;

i. Post-judgment interest; and

j. Other such further relief as the Court may be just and proper.

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: /s/ *Jason D. Strabo*

Jason D. Strabo
Attorneys for Defendants

## JURY DEMAND

Counterclaim Plaintiffs Elevated Ag, LLC and Maricopa Orchards, LLC hereby by demand trial by jury on all issues so triable.

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: /s/ *Jason D. Strabo*

Jason D. Strabo
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

By: /s/ *Jason D. Strabo*
Jason D. Strabo