Proposed
First Amended Counterclaims

1　MCDERMOTT WILL & EMERY LLP
　　JASON D. STRABO (SBN 246426)
2　jstrabo@mwe.com
　　2049 Century Park East, Suite 3200
3　Los Angeles, California  90067
　　(310) 277-4110
4
　　MICHAEL S. NADEL (*pro hac vice* pending)
5　mnadel@mwe.com
　　500 North Capitol Street, N.W.
6　Washington, D.C. 20001
　　(202) 756-8000
7
　　*Attorneys for Counterclaim Plaintiffs*
8

9　　　　　　　　　UNITED STATES DISTRICT COURT

10　　　　　　　　EASTERN DISTRICT OF CALIFORNIA

11

12　KEVIN ASSEMI,　　　　　　　　　　| No. 1:23-CV-01741-EPG

13　　　　　　　Plaintiff,　　　　　　　| <u>JURY TRIAL DEMANDED</u>

14　　　　v.　　　　　　　　　　　　　| **FIRST AMENDED COUNTERCLAIMS AGAINST KEVIN ASSEMI**

15　FARID ASSEMI, et al.,

16　　　　　　　Defendants.

17

18　ELEVATED AG, LLC and
　　MARICOPA ORCHARDS, LLC,
19
　　　　　　　Counterclaim Plaintiffs,
20
21　　　　v.

22　KEVIN ASSEMI,

23　　　　　　　Counterclaim Defendant.

24

25　　　　Pursuant to Federal Rule of Civil Procedure 13, Counterclaim Plaintiffs Elevated Ag, LLC

26　("Elevated") and Maricopa Orchards, LLC ("Maricopa") respectfully bring these First Amended

27

28

Counterclaims against Counterclaim Defendant Kevin Assemi. Counterclaim Plaintiffs plead as follows:

## NATURE OF THE COUNTERCLAIMS

1.       Kevin Assemi is a common thief. He stole $360,691 from Elevated by directing a business partner to pay Elevated's invoices by wire to bank accounts controlled by Kevin Assemi rather than to Elevated's bank account. And to make matters even worse, Kevin Assemi did this using Elevated's trade name and Elevated's logo. Elevated seeks recovery of its funds and a judgment holding Kevin Assemi accountable for his theft.

2.       Kevin Assemi is also a forger. In February 2022, Kevin Assemi and his business partners (including his family) signed an LLC operating agreement establishing that Kevin Assemi holds a "45 percent" interest in Elevated. In 2023, an Assemi family business, Maricopa, was on the verge of closing a significant financing for Elevated with the bank "AgWest," formerly known as Farm Credit West. Kevin Assemi torpedoed the financing by sending AgWest a version of the Elevated's operating agreement that Kevin Assemi electronically altered, making it show, falsely, that Kevin Assemi holds a majority interest in Elevated. To be clear, this is not a matter of legal interpretation or a dispute about who actually owns what percentage of Elevated. Rather, Kevin Assemi used electronic tools to *replace* the ownership table in the operating agreement's electronic file with a different, *fake* ownership table. Then Kevin Assemi sent the fake version of the operating agreement to the bank, along with a litany of false statements regarding Maricopa and its executives. Kevin's forgery killed the loan, to Maricopa's and Elevated's great detriment, and damaged Maricopa's long-term financing relationship with AgWest.

3.       Kevin Assemi's theft and forgery represent crimes. But they are also intentional torts and state and federal statutory violations that carry compensatory and punitive damages. Elevated and Maricopa bring these counterclaims to hold Kevin Assemi accountable for his bad acts and recover every available remedy.

4.       Additionally, Kevin Assemi has leveled numerous baseless allegations against his family, his former friends and business partners, and related businesses—all supported by non-facts that exist only in Kevin Assemi's fevered imagination. In this Court, Kevin Assemi brought

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

numerous claims against Maricopa, including claims for violation of the federal civil RICO statutes. Kevin Assemi accused Maricopa of criminal fraud in violation of federal law. Kevin Assemi has also accused Maricopa of misappropriating trade secrets, committing civil fraud, breaching its contract with him, violating its fiduciary duties to him and to Elevated, and violating employment laws, among other things.

5. After parting ways with his latest set of attorneys—the fourth set that Kevin Assemi has employed against his family over the past two years, and with a motion to dismiss his 31 claims pending—Kevin Assemi voluntarily dismissed his 31 claims—but he did so without prejudice, leaving his allegations and claims hanging over the heads of everyone he has harassed with his legal assault, including Maricopa and Elevated. The unresolved claims impair Maricopa's and Elevated's businesses and reputations—as well as each of the other now-former Defendants. None of them wronged Kevin Assemi or committed the torts and statutory violations of which he has accused them. Kevin Assemi's harmful assertions about Elevated's management are false. Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Court should resolve the disputes that Kevin Assemi's gamesmanship has left unresolved—and resolve them against Kevin Assemi.

## COUNTERCLAIM PARTIES

6. Counterclaim Plaintiff Elevated Ag, LLC is a California limited liability company with its principal place of business at 5260 N. Palm Avenue, Suite 421, Fresno, California 93704.

7. Counterclaim Plaintiff Maricopa Orchards, LLC is a California limited liability company with its principal place of business at 5260 N. Palm Avenue, Suite 421, Fresno, California 93704.

8. Upon information and belief, Counterclaim Defendant Kevin Assemi is a citizen of California currently residing at 7561 N. Cheryl Avenue, Fresno, California 93711.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under to 28 U.S.C. § 1331 because Counts 8, 9, and 10, and 11 of the original Complaint and the First Amended Complaint, which were asserted against Maricopa and others, were brought as federal civil RICO claims, purportedly under 18 U.S.C. §§ 1961 and 1962.

McDermott
Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

10. Additionally, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because several counterclaims (Counterclaim V, for violation of 15 U.S.C. § 1125; Counterclaim VI, for a declaratory judgment that the federal civil RICO statutes, 18 U.S.C. §§ 1961 and 1962, have not been violated; and Counterclaim VII for a declaratory judgment that the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, has not been violated) arise under the laws of the United States.

11. This Court has subject matter jurisdiction over the remaining counterclaims pursuant to 28 U.S.C. § 1367(a).

12. Kevin Assemi is subject to personal jurisdiction in California because he resides in California, has committed the tortious conduct alleged herein exclusively in California, and filed this action in California.

13. Venue is proper in the Eastern District of California under to 28 U.S.C. § 1391(b) because all the parties reside in this District because a substantial part of the acts and omissions giving rise to the counterclaims occurred in this District. Additionally, Kevin Assemi filed his First Amended Complaint in this Court.

## FACTS

14. Kevin Assemi, a licensed attorney, is the son of Farid Assemi ("Farid"), leader of Assemi Group, Inc. ("Assemi Group"), which together with Maricopa and other businesses, is a major agricultural enterprise in the San Joaquin Valley region.

15. For a brief period in 2019, Kevin Assemi held the position of CEO of Maricopa. Kevin proved himself to be an utterly incompetent CEO, and he was terminated after approximately six months. Maricopa did not enter into a written severance agreement with Kevin Assemi.

16. After Kevin Assemi was terminated as CEO, he convinced his family and friends to invest in Elevated, an agricultural enterprise that was created by the filing of Articles of Organization filed with the Secretary of State of California on September 15, 2020.

FIRST AMENDED COUNTERCLAIMS

17. Elevated is governed by an Operating Agreement made effective September 16, 2020. Kevin Assemi attached the Operating Agreement to his Complaint, and it has been filed on the docket as ECF Doc. 1-1 Exhibit A.

18. The Operating Agreement is executed by the original members of Elevated Ag— Kevin Assemi, Maricopa; Jeremy A. Yurosek ("Jeremy"); Devon Yurosek ("Devon"); and Malakan Investments, LLC ("Malakan Investments").

19. Each member signed the Operating Agreement using Docusign software, which assigned the finally executed version to following identification number:

DocuSign Envelope ID: 5F6C9C5A-1AD5-46B6-846E-98BD9683F19C

20. Pursuant to Section 4.1 of the Operating Agreement, Elevated's original managers were Kevin Assemi, Devon, and Jeremy. Kevin Assemi ran Elevated's day-to-day business.

21. Elevated was a party to a series of packing and marketing agreements with Trinity Fruit Company, Inc. ("Trinity"). Under those agreements, Trinity would purchase certain crops from Elevated to pack and market. Elevated would invoice Trinity for the purchases. As the primary manager of Elevated, Kevin Assemi regularly coordinated with Trinity to handle payments of invoices.

22. During the course of 2021 and 2022, Kevin Assemi's behavior became increasingly erratic, and he became estranged from his family.

23. In December 2022, the other members of Elevated amended the Operating Agreement to allow Percentage Interests to be sold with the approval of a majority of the members of Elevated. Additionally, the other members removed Kevin Assemi as a manager of Elevated and appointed Farshid Assemi ("Farshid") and Nader Malakan ("Nader"), the principal of Malakan Investments, as managers. *See* ECF Doc. 1-1 Exhibit B. The members then approved the transfer of Jeremy's and Devon's Percentage Interest of Elevated to Maricopa. From that point forward, Maricopa owned a 50% interest in Elevated, Kevin Assemi owned a 45% interest, and Malakan Investments owned a 5% interest.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

24.     To protect Elevated from Kevin Assemi's bizarre conduct, the new managers of Elevated severed ties between Elevated and Kevin Assemi, except for those required by the Operating Agreement and Kevin Assemi's continuing minority ownership interest.

### Kevin Assemi's Theft of $360,691 from Elevated

25.     On March 9, 2023, unaware that Kevin Assemi had been removed from a management role at Elevated, Trinity sent an email to Kevin Assemi requesting wire instructions to make payments on outstanding invoices.

26.     Kevin Assemi responded that Trinity should send a wire of funds to what he claimed was Elevated's bank account at Bank of America:

Thank you, please send wire of funds to:

**Bank of America**

**Elevated Ag, LLC**
**Account number:**
▨▨▨**1450**
Routing Number for Wires-
**026009593**

For purposes of mail or checks address is

**Elevated Ag C/O Kevin Assemi**
**7561 N. Cheryl Ave,**
**Fresno CA, 93711**

**Warmest Regards,**
**Kevin Assemi**

# Elevated AG

7561 N. Cheryl Ave | Fresno, CA 93711
310-383-9205 | kevin@elevatedag.com | elevatedag.com | LinkedIn

27.     This is the problem:  <u>Elevated has never maintained an account with Bank of America.</u>  Kevin Assemi controlled the Bank of America account to which he fraudulently directed Trinity to send payment for Elevated's invoices.  Since its founding, Elevated has maintained only one bank account, with Citizens Business Bank, ending in -1020.  Kevin Assemi instructed Trinity to transfer money belonging to Elevated and intended for Elevated <u>to Kevin Assemi personally</u>.

28.     Everything in Kevin Assemi's email to Trinity was false. By March 2023, Kevin Assemi had no role with Elevated, except as a recalcitrant minority owner.  And Elevated was not operating from 7561 N. Cheryl Avenue in Fresno.  That is the address of Kevin Assemi's mother's house, where Kevin Assemi was staying.

29.     Kevin Assemi was attempting common theft—and it worked.  On March 13, 2023, Trinity, believing it was paying Elevated, unknowingly paid $78,200.00 to Kevin Assemi himself.

30.     Kevin Assemi did not alert Elevated to Trinity's payment.  Kevin Assemi did not pass the funds on to Elevated.  Instead, Kevin Assemi kept the $78,200.00 for himself.

31.     By June 2023, Kevin Assemi's desperation was growing.  He had gotten himself pushed out of the company he was obsessed with.  His family, which had tolerated his antics for years, had exhausted its patience with him.  He had no job, no income, and no home of his own. He was living with his mother.  Each of the three law firms he had engaged to fight against his family had disengaged, and he had no means to pay his accumulated legal fees.

32.     But Kevin Assemi knew of one source of substantial funds:  He could return to the Trinity well.

34.     On June 23, 2023, Trinity attempted to wire "Elevated Ag c/o Kevin Assemi" a payment of $282,491.63.  The wire was unsuccessful, however, so an accountant at Trinity reached out to Kevin Assemi, still unaware of his separation from and battle with Elevated.

35.     On June 26, 2023, six months after being removed as a manager of Elevated, Kevin Assemi responded to the Trinity accountant by email.  The email is reprinted in full:

FIRST AMENDED COUNTERCLAIMS

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Hello Gail,

I apologize, for the issue. Bank of America wanted us to consolidate our business accounts for Elevated Ag with our DBA Farmwerx, LLC. Here is our updated wire instructions, you can make the check out tour DBA Farmwerx, LLC.

**Bank of America Wire-**
* Farmwerx, LLC
* Account number:
* 711
* Routing number:
* **026009593 (wires)**

If need be this is still the same, with Farmwerx, LLC DBA for the check again.. But the wire is preferred.
For purposes of mail or checks address is

Check Payable to Farmwerx, LLC

Elevated Ag C/ O Kevin Assemi
7561 N. Cheryl Ave,
Fresno CA, 93711

I apologize for some of the administrative issues, our family and their business is going through some issues which I have tried to help them address and it has some spill over. I am working to wrap up things. I appreciate you understanding. Thank you.

Also, what is your timing for completing the distributions and the estimated distribution amount? Thank you.

Feel free to call me on my cell 310-383-9205.

I have also copied my assistant **Jenifer** to help make sure questions and concerns are addressed and that anything of urgency get through to me quickly. Here cell is 559-770-7029 .


**Warmest Regards,**
**Kevin Assemi**



19      36.     Just about everything in Kevin Assemi's email is fraudulent.

20      37.     Farmwerx is a limited liability company created by Kevin Assemi with its principal

21 office at his mother's house.  Farmwerx had no relationship with Elevated in June 2023.

22      38.     Bank of America did not want Elevated to "consolidate" Elevated's accounts with

23 Farmwerx, because Bank of America is not and never has been Elevated's banker.

24      39.     No one from Bank of America could have indicated to Kevin Assemi that Elevated

25 accounts should be consolidated with Farmwerx accounts; there were no Elevated accounts with

26 Bank of America.

27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

40.     The Farmwerx account numbers that Kevin Assemi provided to Trinity were for accounts controlled by Kevin Assemi and not affiliated with Elevated, and the account number was dissimilar from Elevated's account number at Citizens Bank.

41.     A "Check Payable to Farmwerx, LLC" would not have been a payment to Elevated, and was not intended by Kevin Assemi to be a payment to Elevated.

42.     There were no "administrative issues"—except that Trinity had been unable to complete a wire transfer using the fraudulent information that Kevin Assemi had provided in March 2023.

43.     Kevin Assemi was not trying "to help" his family and their business "address" issues.  Nor was Kevin Assemi "working" to "wrap" such issues up.  He was trying to steal from them.  And he did so.

44.     Trinity followed Kevin Assemi's instructions and wired the $282,491.63 to Kevin Assemi's account, rather than to Elevated.

45.     Kevin Assemi did not alert Elevated to Trinity's payment.  Kevin Assemi did not pass the funds on to Elevated.  Instead, Kevin Assemi kept the $282,491.63 for himself.

46.     In total, Kevin Assemi stole from Elevated at least $360,691.63 in payments from Trinity.

47.     That was far from the end of Kevin Assemi's dishonesty, however.

**Kevin Assemi's Forgery and False Statements to AgWest**

48.     During the same June time period that Kevin Assemi was stealing the second round of payments from Trinity, his family's business, Maricopa, was on the verge of closing a major round of financing for Elevated with AgWest.  AgWest had a long-standing business relationship with Maricopa and the Assemi family.  AgWest had previously provided loans to Maricopa and was likely to continue doing so in the future, as demonstrated by its intention to loan money to Elevated, of which Maricopa was the 50 percent plurality owner.

49.     Kevin Assemi, who is a former executive with Maricopa, knew of the business relationship between Maricopa and AgWest.  Somehow, Kevin Assemi got wind of the AgWest transaction involving Elevated.

FIRST AMENDED COUNTERCLAIMS

50.     Kevin Assemi became determined to stop the transaction as a means of creating leverage to force his family to give him money that he desperately needed and believed himself entitled to.

51.     On June 29, 2023, Kevin Assemi emailed Kevin Layne, an AgWest vice president. Kevin Assemi wrote to Kevin Layne, in part: "I am the sole manager [of Elevated], see page 8 section [4.1], having sole authority to choose manager as majority owner based on our initial contributions-which you will find on page 2, section 2.1, including Maricopa['s] contributions in kind."

52.     All of this was false and fraudulent.  Kevin Assemi was not the "sole manager" of Elevated, nor a manager at all, having been removed by the other members six months earlier.  Nor was Kevin Assemi the majority owner of Elevated.  At no point did Kevin Assemi hold more than 45 percent ownership of Elevated.  And in June 2023, Kevin Assemi had no authority whatsoever with respect to Elevated.

53.     But Kevin Assemi's statements to Kevin Layne were not mere unsupported assertions.  <u>Kevin Assemi supported them with a forged version of the Operating Agreement</u>, which Kevin Assemi used computer software to create.  Kevin Assemi transmitted the forged version to Kevin Layne by email.

54.     The forged document that Kevin Assemi sent to Kevin Layne bears the same Docusign ID as the real Operating Agreement:

> DocuSign Envelope ID: 5F6C9C5A-1AD5-46B6-846E-98BD9683F19C

But it is not the same document.  It is a fake.

55.     Section 2.1 of the Operating Agreement sets forth the members' percentage interests in Elevated:

> 2.1 <u>Percentage Interests in Company</u>. In exchange for their initial capital contributions made by each Member as shown on the books and records of the Company, the Percentage Interests of the Company are held as follows:
>
> | <u>Member</u> | <u>Percentage Interest</u> |
> |---|---|
> | Kevin | 45 percent |
> | Jeremy | 5 percent |
> | Devon | 5 percent |
> | Malakan | 5 percent |
> | Maricopa | 40 percent |

56. In the forged version that Kevin Assemi sent to Kevin Layne, he replaced Section 2.1:

> 2.1 <u>Percentage Interests in Company</u>. In exchange for their initial capital contributions made by each Member as shown on the books and records of the Company, the Percentage Interests of the Company are held as follows:
>
> | Member | Initial Capital Contribution* | Percentage Interest | |
> |---|---|---|---|
> | 3020 · Maricopa Equity (in Kind see Schedule) | $ 5,740,560 | 40% | |
> | 3040 · Kevin Assemi Equity | $ 8,266,363 | 57% | |
> | 3060 · Nader Malakan Equity | $ 420,000 | 3% | |
> | 3080 · Jeremy Yurosek Equity | $ - | 0% | Resigned |
> | 3090 · Devon Yurosek Equity | $ - | 0% | Resigned |
> | | 14,426,923 | 100% | |
>
> (a) <u>Maricopa Contribution in Kind:</u>
>
> | Contributions | APNS | Water Rights (CAW) | AF/Acre | Acres | Maricopa Valuation On Contribution | Total |
> |---|---|---|---|---|---|---|
> | Basic School Farm Land Only | 220-211-24 | 547.8 | 2.79 | 196.4 | $14,000 | $2,749,320 |
> | | | None | | 309.6 | $ 2,000 | $ 619,240 |
> | Gardner Field Farm (Land Only) | 220-050-71 | | | 186 | $ 2,000 | $ 372,000 |
> | Yurosek Ownership Purchase | | | | | | $2,000,000 |
> | **Maricopa Contributions** | | | | | | **$5,740,560** |
>
> *Valuation of interest by Maricopa has not been reduced for options rights by other partners or true up on initial valuation in kind.

Sitting at a keyboard, Kevin Assemi purportedly transformed himself into the 57 percent majority owner of Elevated.

57. Kevin Assemi also altered Section 4.1 of the Operated Agreement, making it appear to provide: "The Members agree Kevin Assemi, shall manage and control the Company's business and affairs, for the benefit of all Members, as the 'Managers' of the Company and each a

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

FIRST AMENDED COUNTERCLAIMS

'Manager.' Jeremy Yurosek and Devon Yurosek have resigned on or before December 27, 2022 as Managers leaving Kevin Assemi as sole manager."

58.     Kevin Assemi did *not* provide to Kevin Layne the Action by Written Consent that the Managers adopted on December 28, 2022:

> In accordance with Section 17704.07 of the California Revised Uniform Limited Liability Company Act and Section 2.8 of the Operating Agreement (the "Operating Agreement") of Elevated Ag, LLC, a California limited liability company (the "Company") dated effective as of September 16, 2020, the undersigned constituting Members holding a majority of the outstanding Percentage Interests of the Company take the following actions without a meeting:
>
> REMOVAL OF MANAGER
>
> 1.  Kevin Assemi is removed as a Manager of the Company as of the Effective Date of this Action.
>
> APPOINTMENT OF ADDITIONAL MANAGERS
>
> 1.  Nader Malakan and Farshid Assemi are hereby appointed to be Managers of the Company as of the Effective Date of this Action.

59.     Kevin Assemi implored Kevin Layne:  "Please do not close the loan and let's discuss."

60.     It took only 28 minutes for Kevin Assemi's attempted sabotage of the loan and Maricopa's relationship with AgWest to succeed.  Kevin Layne wrote to the Assemi Group:  "I just received the email below with an attachment also attached to this email. The attachment shows many contradictions in ownership, management, and signatory powers for Elevated Ag. Both documents appear to be legitimate and I'm unable to determine which one is accurate. Unfortunately, I'm going to have to put this loan on hold until all owners can come to an agreement and provide me with documentation to that effect."

61.     Later in the day, Kevin Assemi sent another email to a group of recipients including Kevin Layne at AgWest. Kevin Assemi wrote, in part:  "I have now contacted the Farm Credit Administration directly through their Criminal Referral program to report the attempted fraudulently recording (sic) a loan on Elevated Ag's property without authority to do so and appropriate the money for non-Elevated Ag own use (sic) and all without even informing me."

62.     Kevin Assemi further stated:  "I have already reached out to the enforcement branch of California's lending agency DFPI and will be advancing my reporting of your misconduct

regarding the Yurosek loan and SME Partners and retaliatory action. This includes all correspondence from the Yuroseks, John [Bezmalinovic], [Jason Hollrah], and others making it very clear your misconduct (sic)."

63. Kevin Assemi further stated: "Lastly, early on reached out to higher up enforcement agencies regarding this misconduct and other significant misconduct which there have been recent newspaper articles published (sic.). I have fully documented this now and I will be circling back to report to this all to this agency as well."

64. John Bezmalinovic ("Bezmalinovic"), the Assemi Group's general counsel, did not engage in any misconduct. Nor did Jason Hollrah ("Hollrah"), the Assemi Group's chief financial officer. Nor did Devon. Nor did Jeremy. Kevin Assemi's statements to AgWest to the contrary were false. No one attempted fraudulent recording of a loan. The only fraud was by Kevin Assemi.

65. As Kevin Assemi intended, as a result of the false information provided by Kevin Assemi, AgWest backed out of the financing that it been prepared to provide. The loss of that financing significantly harmed Elevated's enterprise.

66. The loss of the financing also harmed Maricopa, because a portion of the loan would have been used to pay off debt that Elevated owned to Maricopa.

67. The false information by Kevin Assemi also harmed and disrupted Maricopa's relationship with AgWest. Since Kevin Assemi's misconduct, Maricopa has been unable to obtain financing from AgWest, which has significantly harmed Maricopa's enterprise. Several loans from AgWest to Maricopa that were under review did not go forward as a result of Kevin Assemi's misconduct.

### Kevin Assemi's Claims Against the Counterclaim Plaintiffs

68. On December 15, 2023, Kevin Assemi filed a 31-count Complaint in the Superior Court for Fresno County. Certain Defendants removed the action to this Court. On March 6, 2024, Kevin Assemi filed a First Amended Complaint. ECF 26.

69. Kevin Assemi is a serial fabulist, and the First Amended Complaint is a ramble of falsehoods. Counterclaim Plaintiffs incorporate the First Amended Complaint by reference for the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

limited purpose of establishing that there are actual cases and controversies as to the Counterclaims herein that seek a declaratory judgment.

70. In the First Amended Complaint, Kevin Assemi falsely claims that Maricopa and others violated the federal civil RICO statutes. He alleges that Maricopa, along with Farid, Farshid, Darius Assemi ("Darius"), and Hollrah, engaged in "criminal violation of the federal wire fraud statute" by attempting to procure the loan from AgWest. ECF 26 ¶ 100. Kevin Assemi also falsely alleges that Maricopa had submitted "false and fabricated tax documents." *Id.* ¶ 110.

71. Kevin Assemi also alleges that Maricopa, along with Malakan Investments and Devon and Jeremy, had fraudulently induced him to enter into the Operating Agreement, that Maricopa breached the Operating Agreement, and that Maricopa misappropriated Elevated's property.

72. Kevin Assemi also alleges that Elevated could not operate through the signature authority of Farshid and Nader.

73. Kevin Assemi also alleged that the transfer of ownership from Jeremy and Devon to Maricopa was improper.

74. Kevin Assemi also alleged that Maricopa and others had violated his rights and various statutes by terminating him wrongfully and violating employment statutes.

75. The Defendants filed a motion to dismiss. ECF 31.

76. On April 15, 2024, Kevin Assemi voluntarily dismissed with claims without prejudice. ECF 48.

77. The Clerk has entered default against Kevin Assemi on Counterclaims I through IV below, which are repeated below without substantive alteration except in the paragraph numbering. ECF 32.

## COUNTERCLAIM I

### CIVIL THEFT – CALIFORNIA PENAL CODE § 496(c)

#### (Brought by Elevated)

78. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

79. Kevin Assemi committed theft.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

80.    Kevin Assemi intended to, and did, permanently deprive Elevated of the $360,691.63 that Trinity intended to transfer by wire to Elevated in payment of Elevated's invoices.

81.    Kevin Assemi directed Trinity to make payment to Elevated "care of Kevin Assemi," knowing he was not a manager of Elevated nor authorized to receive payments for Elevated.

82.    Kevin Assemi directed Trinity to wire money to accounts he controlled at Bank of America, knowing they were accounts controlled by him, not Elevated, and further knowing that Elevated did not have and had never had accounts at Bank of America.

83.    In addition to supplying false account information to Trinity to steal Elevated's money, Kevin Assemi made numerous false representations to Trinity intended to deceive Trinity and facilitate his theft.

84.    Kevin Assemi received property—the $360,691.63 from Trinity, that was stolen and obtained by him in a manner constituting theft, known the property was stolen by him, and was then withheld it from Elevated, knowing it belonged to Elevated.

85.    Kevin Assemi's actions were willful and malicious.

86.    Kevin Assemi's conduct has injured Elevated in violation of California Penal Code § 496(a).  Pursuant to California Penal Code § 496(c), Maricopa is entitled to $1,082,074.89— "three times the amount of actual damages"—and reasonable attorney's fees.

**COUNTCLAIM II**

**CONVERSION**

**(Brought by Elevated)**

87.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

88.    Elevated was entitled to the $360,691.63 that Trinity intended to transfer by wire to Elevated in payment of Elevated's invoices.

89.    Kevin Assemi wrongfully and intentionally directed Trinity's payments away from Elevated and to accounts controlled by Kevin Assemi.  In so doing, Kevin Assemi wrongfully dispossessed Elevated of its property rights.

90.    Elevated was damaged by the loss of the $360,691.63 that Kevin Assemi stole.

FIRST AMENDED COUNTERCLAIMS

91.     Kevin Assemi's actions are egregious and reprehensible. Kevin Assemi was stealing from his business partners and, effectively, his family—people who trusted him, at least when they went into business with him.

92.     Maricopa is entitled to $360,691.63 in compensatory damages and punitive damages in an amount to be determined at trial.

**COUNTERCLAIM III**

**INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC RELATIONS**

**(Brought by Maricopa and Elevated)**

93.     Each of the foregoing paragraphs are incorporated herein as if separately realleged.

94.     Kevin Assemi knowingly interfered with Maricopa's economic relationship with AgWest.

95.     Kevin Assemi knowingly interfered with Elevated's economic relationship with AgWest.

96.     Specifically, Kevin Assemi altered the operating agreement and used the forged, fake version to dissuade AgWest from closing the financing for Elevated that was on the verge of closing, including by falsely representing that Kevin Assemi was the majority owner of Elevated.

97.     Kevin Assemi made false statements to AgWest suggesting that Maricopa and Maricopa officials had engaged in criminal activity, fraud, and other misconduct.

98.     Kevin Assemi intended his false statements and the forged version of the Operating Agreement to prevent AgWest from closing its loan to Elevated and to disrupt the long term financing relationship between AgWest and Maricopa.

99.     Kevin Assemi's misconduct was independently wrongful as a violation of California common law.

100.     Kevin Assemi knew that his misconduct would result in the disruption of the prospective economic relationship between AgWest and Maricopa, and that was his intent.

101.     Kevin Assemi's intentional misconduct disrupted the perspective economic relationship between AgWest and Maricopa.

102. As a direct and proximate result of Kevin Assemi's conduct, Maricopa and Elevated have each sustained significant harm and damages in any amount to be proven at trial.

103. Kevin Assemi's conduct was egregious, wanton, willful and malicious, warranting punitive damages.

## COUNTERCLAIM IV

## BREACHES OF FIDUCIARY DUTIES

### (Brought by Elevated)

104. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

105. Kevin Assemi contends that he is the manager of Elevated, and that his removal from that position is invalid.

106. Kevin Assemi is incorrect. But if Kevin Assemi were correct, then as manager of Elevated he would owe to Elevated fiduciary duties of loyalty and care pursuant to California Corporate Code § 17704.09.

107. If Kevin Assemi owed Elevated a duty of loyalty, he breached that duty of loyalty by stealing from Elevated the $360,691.63 that Trinity attempted to pay to Elevated.

108. If Kevin Assemi owed Elevated a duty of care, he breached that duty of care by engaging if intentional misconduct and knowingly violating the law by stealing from Elevated the $360,691.63 that Trinity attempted to pay to Elevated and by transmitting to AgWest, over the wires, the forged version of the Operating Agreement and related false statements, thereby sabotaging AgWest's financing of Elevated.

109. Elevated was each injured by Kevin Assemi's egregious and malicious misconduct.

## COUNTERCLAIM V

## LANHAM ACT, 15 U.S.C. § 1125

### (Brought by Elevated)

110. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

111. In connection of Trinity's purchase of crops from Elevated to pack and market, Kevin Assemi falsely and misleadingly used Elevated's name and Elevated's logo in a manner that

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

was likely to cause, and did cause, confusion and mistake and deceived Trinity as to Kevin Assemi's affiliation, connection, and/or association with Elevated.

112.    Elevated was damaged by such actions, as they resulted in Trinity transmitting $360,691.63 that Trinity intended to pay to Elevated.

113.    Kevin Assemi's actions were willful and malicious.  Additionally, Kevin Assemi's misconduct is continuing.  Kevin Assemi continues to use an "ElevatedaAg.com" email address, continues to represent his mother's house, where he lives, as the principal place of business of Elevated, and, upon information and belief, continues to represent himself as speaking for, involved in the management of, and the majority owner of Elevated.  Kevin Assemi's conduct is causing confusion regarding Elevated and irreparably harms Elevated.

## COUNTERCLAIM VI
## DECLARATORY JUDGMENT:  NO CIVIL RICO VIOLATION
### (Brought by Maricopa)

114.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

115.    Kevin Assemi has alleged that Maricopa violated the civil RICO statutes, 18 U.S.C. §§ 1961(5), 1962(b).  Kevin Assemi filed claims in this Court for violation of the civil RICO statutes.  Kevin Assemi's voluntary dismissal of his civil RICO claims was without prejudice, so an actual case or controversy exists regarding whether Maricopa violated the civil RICO statutes, 18 U.S.C. §§ 1961(5), 1962(b).

116.    Maricopa did not engage in prohibited activities or committed RICO predicate acts. Maricopa did not engage in a pattern of racketeering activity.  Maricopa did not participate as a principal in racketeering activity.  Maricopa did not derive income from racketeering activity. Maricopa did not participate, directly or indirectly, in the conduct of the affairs of a RICO enterprise.

117.    Maricopa did not make false or fraudulent representations to AgWest.  The ownership of Elevated was represented accurately to AgWest by Maricopa, and fraudulently by Kevin Assemi through his forged operating agreement.  Farshid and Nader were in fact managers of Elevated with signature authority.  Kevin Assemi has never held a majority interest in Elevated.

He holds a 45 percent interest. Maricopa did not attempt to misappropriate funds away from Elevated.

118. Maricopa is entitled to a declaratory judgment that it did not violate the civil RICO statutes as Kevin Assemi alleges.

## COUNTERCLAIM VII

## DECLARATORY JUDGMENT: NO DTSA VIOLATION

### (Brought by Maricopa)

119. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

120. Kevin Assemi has alleged that Maricopa misappropriated his trade secrets. Specifically, Kevin Assemi alleges that he has a protectable property right in what he calls "M-Files," which are M-Files, analytic systems, geographic information system, and the data sources, and data structure for each. ECF 26 ¶ 238. Kevin Assemi alleges that Maricopa misappropriated the M-Files.

121. Kevin Assemi's voluntary dismissal of his misappropriation of trade secret claims was without prejudice, so an actual case or controversy exists as to whether Maricopa misappropriated Kevin Assemi's trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. Kevin Assemi's now-dismissed claim asserts the right and standing to bring a claim against Maricopa pursuant to the California Uniform Trade Secrets Act. *Id.* ¶ 240. The elements for such a claim, if they exist, would also support a claim for violation of the federal Defend Trade Secrets Act, as the alleged trade secret is related to Maricopa products that are used in interstate commerce.

122. Maricopa has not misappropriated Kevin Assemi's trade secret.

123. "M-Files" is not a trade secret of Kevin Assemi. Maricopa has not misappropriated "M-Files" from Kevin Assemi, as Kevin Assemi has no rights in "M-Files," nor in any other intellectual property belonging to Maricopa or Assemi Group.

124. Kevin Assemi has not been injured by Maricopa's use of "M-Files."

125. Maricopa is entitled to a declaratory judgment that it did not misappropriate Kevin Assemi's trade secrets in violation of the federal Defend Trade Secrets Act.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## COUNTERCLAIM VIII

## DECLARATORY JUDGMENT:  NO CUTSA VIOLATION

### (Brought by Maricopa)

126.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

127.    Kevin Assemi's voluntarily dismissal of his misappropriation of trade secret claims was without prejudice, so an actual case or controversy exists as to whether Maricopa misappropriated Kevin Assemi's trade secrets in violation of the California Uniform Trade Secrets Act.

128.    Maricopa is entitled to a declaratory judgment that it did not misappropriate Kevin Assemi's trade secrets in violation of the California Uniform Trade Secrets Act.

## COUNTERCLAIM IX

## DECLARATORY JUDGMENT: MANAGER CLAIMS

### (Brought by Elevated)

129.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

130.    In the First Amended Complaint, Kevin Assemi alleged that through their roles as managers of Elevated, Farshid and Nader breached duty of care to Kevin Assemi, breached a duty of care to Elevated, breached a fiduciary duty, committed unfair business practices, and are responsible for abuse of control, gross mismanagement, and corporate waste (the "Manager Claims").  Kevin Assemi's voluntary dismissal of the Manager Claims was without prejudice, so an actual case or controversy exists regarding whether Elevated's managers breached a duty of care to Kevin Assemi, breached a duty of care to Elevated, breached a fiduciary duty, committed unfair business practices, and are responsible for abuse of control, gross mismanagement, and corporate waste.

131.    Elevated's managers did not breach a duty of care to Kevin Assemi, did not breach a duty of care to Elevated, did not breach a fiduciary duty, did not commit unfair business practices, and are not responsible for abuse of control, gross mismanagement, and corporate waste.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

132.     Additionally, Kevin Assemi contends that Farshid and Nader are not the validly appointed managers of Elevated and lack signature authority for Elevated.  This has impaired Elevated ability to do business.

133.     An actual case or controversy exists regarding whether Elevated's managers breached a duty of care to Kevin Assemi, breached a duty of care to Elevated, breached a fiduciary duty, committed unfair business practices, and are responsible for abuse of control, gross mismanagement, and corporate waste.

134.     An actual case or controversy also exists regarding whether Farshid and Nader are the validly appointed managers of Elevated, with signature authority for Elevated.

135.     Elevated's managers did not consummate any unlawful, unfair, or fraudulent business practice designed to deprive Kevin Assemi of the benefits of his percentage interest in Elevated.  Kevin Assemi has not been deprived of those benefits.

136.     Elevated's managers have refrained from engaging in grossly negligent or reckless conduct, intentional misconduct, and knowing violation of law as to Elevated.

137.     Elevated's managers did not irrationally squander or give away Elevated's corporate assets.

138.     Elevated is entitled to a declaratory judgment that Elevated's managers did not breach a duty of care to Kevin Assemi, did not breach a duty of care to Elevated, did not breach a fiduciary duty, did not commit unfair business practices, and are not responsible for abuse of control, gross management, and corporate waste.

139.     Elevated is further entitled to a declaratory judgment Farshid and Nader are the validly appointed managers of Elevated, with signature authority for Elevated.

## COUNTERCLAIM X

## DECLARATORY JUDGMENT:  MEMBER CLAIMS

### (Brought by Maricopa)

140.     Each of the foregoing paragraphs are incorporated herein as if separately realleged.

141.     In the First Amended Complaint, Kevin Assemi has alleged that the other original members of Elevated—Maricopa, Malakan Investments, Devon, and Jeremy (the "Other

Members")—committed fraud in the inducement, breached the Operating Agreement, breached the implied covenant and obligation of good faith and fair dealing, and misappropriated from Elevated (the "Member Claims"). Kevin Assemi's voluntary dismissal of the Member Claims was without prejudice, so there exists an actual case or controversy regarding whether the Other Members committed fraud in the inducement, breached the Operating Agreement, breached the implied covenant and obligation of good faith and fair dealing, or misappropriated from Elevated.

142. The Other Members did not commit fraud in the inducement, did not breach the Operating Agreement, did not breach the implied covenant and obligation of good faith and fair dealing, and did not misappropriate from Elevated.

143. The Other Members made no intentional misrepresentations to Kevin Assemi upon which he relied in signing the Operating Agreement.

144. The Other Members did not breach the Operating Agreement.

145. The Percentage Interests listed in the Operating Agreement were the members' respective interests as of the Operating Agreement's execution.

146. Kevin Assemi did not comply with his own obligations under the Operating Agreement.

147. Kevin Assemi was not damaged by any conduct of the Other Members.

148. The Operating Agreement was validly amended to permit the sale of a Percentage Interest in Elevated with only a majority interest approving the sale. Jeremy's and Devon's sales of their Percentage Interests in Elevated to Maricopa was valid.

149. If Kevin Assemi had been given the opportunity to purchase Jeremy's and Devon's Percentage Interests in Elevated, he could not have done so because he lacked the funds required.

150. The Other Members did not participate in wire fraud. The only wire fraud in this case was perpetrated by Kevin Assemi. Maricopa's representations to AgWest in attempting to obtain a loan were honest and accurate. Kevin Assemi's representations were fraudulent. Devon and Jeremy made no pertinent representations to AgWest at all.

151. The Other Members did not conspire to take Kevin Assemi's equity in Elevated.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

152.     The Other Members did not misappropriate or convert Elevated's funds or property for their own benefit.

153.     Maricopa is entitled to a declaratory judgment that it not commit fraud in the inducement, did not breach the Operating Agreement, did not breach the implied covenant and obligation of good faith and fair dealing, and did not misappropriate from Elevated.

### COUNTERCLAIM XI

### DECLARATORY JUDGMENT:  EMPLOYMENT CLAIMS

#### (Brought by Maricopa)

154.     Each of the foregoing paragraphs are incorporated herein as if separately realleged.

155.     Kevin Assemi has alleged that Maricopa and others wrongfully terminated him, that Maricopa and others violated California Labor Code Section 1102.5, and that Maricopa breached a severance agreement with Kevin Assemi. Thus, an actual case or controversy exists as to whether Maricopa wrongfully terminated Kevin Assemi, violated California Labor Code Section 1102.5, or breached a severance agreement with Kevin Assemi.

156.     Maricopa did not wrongfully terminate Kevin Assemi.  Maricopa did not violate Labor Code 1102.5 by terminating Kevin Assemi.  Kevin Assemi's termination was not against public policy.  Kevin Assemi's termination was not retaliatory.  Moreover, Kevin Assemi was not a "whistle-blower."  That is yet another self-aggrandizing fantasy.

157.     Maricopa did not breach any valid and enforceable severance agreement with Kevin Assemi.

158.     Maricopa is entitled to a declaratory judgment that Maricopa did not wrongfully terminate Kevin Assemi, did not violate Labor Code 1102.5 by terminating Kevin Assemi, and did not breach a severance agreement with Kevin Assemi.

### COUNTERCLAIM XII

### DECLARATORY JUDGMENT:  NO INTENTIONAL INTERFERENCE

#### (Brought by Maricopa)

159.     Each of the foregoing paragraphs are incorporated herein as if separately realleged.

160.    Kevin Assemi has alleged that Maricopa and others (specifically, Farid, Farshid, Darius, Malakan Investments, Hollah, Bezmalinovic, and Maricopa general counsel Elizabeth Steinhauer-Clark) intentionally interfered with Elevated's prospective economic advantage. Therefore, an actual case or controversy exists regarding whether Maricopa intentionally interfered with Elevated's prospective economic advantage.

161.    Maricopa's intention from the outset has been to economically benefit Elevated, of which Maricopa owns 50% and has always owned at least 40%. The same is true of the others named. Neither Maricopa nor the others named have ever intentionally interfered with Elevated's prospective economic advantage, and it makes no sense they would have do so.

162.    Maricopa is entitled to a declaratory judgement that it did not intentionally interfere with Elevated's prospective economic advantage.

## COUNTERCLAIM XIII

## DECLARATORY JUDGMENT:  OWNERSHIP OF ELEVATED

### (Brought by Maricopa)

163.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

164.    Kevin Assemi contends, in this action and elsewhere, that Maricopa owns less than a 50% interest in Elevated, and that Kevin Assemi owns a majority interest in Elevated. Kevin Assemi's contentions are incorrect. An actual case or controversy exists as to the ownership of Elevated. Kevin Assemi's representations that he owns a majority of Elevated, speaks for Elevated, and can control or influence Elevated's business decisions harms Maricopa's ability to do business and function as the majority owner of Elevated.

165.    Maricopa owns a 50% interest in Elevated, Malakan Investing owns a 5% interest in Elevated, and Kevin Assemi owns a 45% interest in Elevated.

166.    Maricopa is entitled to a declaratory judgment that Maricopa owns a 50% interest in Elevated, Malakan Investing owns a 5% interest in Elevated, and Kevin Assemi owns a 45% interest in Elevated.

## COUNTERCLAIM XIV

## EXPUNGEMENT OF LIS PENDENS

### (Brought by Maricopa)

167. Each of the foregoing paragraphs are incorporated herein as if separately realleged.

168. On December 20, 2023, Kevin Assemi caused the recording of the lis pendens with the Kern County Assessor-Recorder as to five properties, Assessor Parcel Numbers ("APNs") 220-050-49, 220-050-12, 220-050-69, 200-050-71, and 220-211-24 and (the "Properties"). ECF 9 Ex. A. Subsequently, Kevin Assemi filed the lis pendens with this Court. ECF 9.

169. According to Plaintiff's First Amended Complaint, on April 7, 2022, John Bezmalinovic, acting as counsel of Maricopa and Elevated, "made a capital call identifying the initial capital call for Elevated that needed to be trued up." ECF 26 ¶ 70. "In exchange for an agreed forty percent (40%) membership interest, as its initial capital contribution to Elevated, Maricopa was to contribute cash, along with multiple parcels of real property and water rights (to wit: Kern County APNs 220-050-49, 220-050-12, and 220-050-69 with a combined value of more than Eight Million Dollars ($8,000,000.00,) which were delinquent from 2020." *Id.*

170. As for APN 220-211-24, that is identified as a property in Kern County owned by Maricopa. *Id.* ¶ 28. The First Amended Complaint never refers to it again.

171. Under the most generous reading of the First Amended Complaint, APNs 220-050-49, 220-050-12, and 220-050-69 were the subject of Count 3 (breach of contract by failure to make capital contributions) and Count 31 (constructive trust), although neither count refers to the Properties specifically. Count 3 is not a real property claim. The other two properties, APNs 200-050-71 and 220-211-24, were not the subject of any claim.

172. With the claims in First Amended Complaint now dismissed, Kevin Assemi has no claims pending with respect to any of the Properties.

173. Maricopa is entitled to expungement of the lis pendens.

### JURY DEMAND

174. Counterclaim Plaintiffs demand a trial by jury on all claims so triable.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**REQUESTED RELIEF**

Counterclaim Plaintiffs respectfully request the following relief:

a.      Judgment on each counterclaim in Counterclaim Plaintiffs' favor and against Kevin Assemi;

b.      As to Counterclaim I for civil theft, an award for Elevated in the amount of $1,082,074.89, and attorney's fees as provided by California Penal Code § 496(c);

c.      As to Counterclaim II for conversion, an award for Elevated in the amount of $360,691.63 in compensatory damages and punitive damages in an amount to be determined at trial;

d.      As to Counterclaim III for intentional inference with prospective economic relations, an award for Maricopa and Elevated of compensatory and punitive damages in an amount to be determined at trial;

e.      As to Counterclaim IV for breach of fiduciary duties, an award for Elevated of compensatory and punitive damages in an amount to be determined at trial;

f.      As to Counterclaim V for violation of the Lanham Act, 15 U.S.C. § 1125, an award for Elevated of Kevin Assemi's profits, damages, treble damages, and attorney's fees and costs, including all remedies available under 15 U.S.C. § 1117(a), and preliminary and permanent injunctive relief.

g.      As to Counterclaim VI, a declaratory judgment that Maricopa did not violate the civil RICO statutes, 18 U.S.C. §§ 1961 & 1962.

h.      As to Counterclaim VII, a declaratory judgment that Maricopa did not misappropriate trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

i.      As to Counterclaim VIII, a declaratory judgment that Maricopa did not misappropriate trade secrets in violation of the California Uniform Trade Sections Act.

j.      As to Counterclaim XI, a declaratory judgment that (i) Elevated's managers did not breach a duty of care to Kevin Assemi, (ii) Elevated's managers did not breach a duty of care to Elevated, (iii) Elevated's managers did not breach a fiduciary duty, (iv) Elevated's managers did

not commit unfair business practices, (v) Elevated's managers are not responsible for abuse of control, gross mismanagement, and corporate waste, and (vi) that Farshid and Nader are the validly appointed managers of Elevated with signature authority for Elevated.

k.      As to Counterclaim X, a declaratory judgment that (i) Maricopa did not breach Elevated's Operating Agreement, (ii) Maricopa did not breach the implied covenant of good faith and fair dealing or any obligation of good faith and fair dealing, and (iii) Maricopa did not misappropriate from Elevated.

l.      As to Counterclaim XI, a declaratory judgment that (i) Maricopa did not wrongfully terminate Kevin Assemi, (ii) Maricopa did not violate Labor Code 1102.5 by terminating Kevin Assemi, and (iii) Maricopa did not breach a severance agreement with Kevin Assemi.

m.      As to Counterclaim XII, a declaratory judgment that Maricopa did not intentionally interfere with Elevated's prospective economic advantage.

n.      As to Counterclaim XIII, a declaratory judgment that Maricopa owns a 50% interest in Elevated, Malakan Investing owns a 5% interest in Elevated, and Kevin Assemi owns a 45% interest in Elevated, and preliminary and permanent injunctive relief.

o.      As to Counterclaim XIV, an order expunging the lis pendens wrongfully recorded by Plaintiff Kevin Assemi with respect to APNs 220-050-49, 220-050-12, 220-050-69, 200-050-71, and 220-211-24.

p.      As to all Counterclaims VI through XIII, all such further and necessary relief based on the Court's declaratory judgments, pursuant to 28 U.S.C. § 2202.

q.      Equitable relief preventing Kevin Assemi from being unjustly enriched or otherwise benefitting from his wrongdoing, including barring Kevin Assemi from recovering any share of money awarded to Elevated;

r.      An award of attorney's fees;

s.      An award of costs, including pursuant to 28 U.S.C. § 1920;

t.      Pre-judgment interest;

u.      Post-judgment interest; and

v.      Other such further relief as the Court may be just and proper.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

April 21, 2024

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: /s/ *Michael S. Nadel*

Michael S. Nadel
Attorneys for Counterclaim Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## RENEWED JURY DEMAND

Counterclaim Plaintiffs hereby reiterated their demand for trial by jury on all issues so triable.

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By: /s/ *Michael S. Nadel*

Michael S. Nadel
Attorneys for Counterclaim Plaintiffs

McDermott Will & Emery LLP
Attorneys at Law
Los Angeles

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

By:     /s/ *Michael S. Nadel*
         Michael S. Nadel